IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**ABRAHAN JOSE AGUILAR SANCHEZ**                    **PETITIONER**

v.                                    CIVIL ACTION NO. 5:19-cv-113-DCB-MTP

**SHAWN GILLIS**                                           **RESPONDENT**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Petitioner Abrahan Jose Aguilar Sanchez's Petition for Writ of Habeas Corpus [1] pursuant to 28 U.S.C. § 2241 and Motion to Enforce Removal or Release [15]. Having considered the parties' submissions and the applicable law, the undersigned recommends that the Court grant the Petition [1], grant the Motion to Enforce Removal or Release [15], and order that Petitioner be deported or released from Immigration and Customs Enforcement ("ICE") custody within thirty days of a favorable ruling on the Petition [1].

## BACKGROUND

On April 24, 2017, in the United States District Court for the Southern District of Florida, Petitioner—an alien from Venezuela—was convicted of smuggling firearms from the United States. *See* [12-1]. On April 16, 2019, Petitioner was taken into ICE custody, and an expedited removal order was issued. *Id*.

On October 28, 2019, Petitioner filed the instant Petition, arguing that his extended detention in ICE custody is unlawful. Petitioner seeks release from immigration custody. On January 6, 2019, Respondent filed a Response [12], arguing that the Petition should be denied because Petitioner's removal to Venezuela is imminent. On May 5, 2020, Petitioner filed a

Motion to Enforce Removal or Release [15], requesting that the Court enter an order directing ICE to remove or release him within thirty days.

## ANALYSIS

The controlling statute in this case, 8 U.S.C. § 1231(a)(1)(A), provides that the Attorney General has ninety days after an order of removal becomes final to deport the alien. The Supreme Court has held that detention of aliens beyond this ninety-day period is acceptable up to six months. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). This, however, does not mean that every alien not removed after six months must be released. "After this 6-month period, once the alien provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing." *Id*. "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. "[D]etermining what the 'reasonably foreseeable future' really is, is a factual determination to be undertaken by the habeas court looking into the circumstance and detention length of each individual petitioner." *Kane v. Mukasey*, 2008 WL 11393137, at *4 (S.D. Tex. Aug. 21, 2008), *superseded by Kane v. Mukasey*, 2008 WL 11393094 (S.D. Tex. Sep. 12, 2008) (finding habeas petition was moot after petitioner was deported).

"The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). This burden does not require the alien to show that deportation will prove "impossible" or "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable . . . ." *Zadvydas*, 533 U.S. at 702. "In order to shift the burden to the Government, an alien must demonstrate that the circumstances of his status or the existence of the particular individual barriers to his repatriation to his country of

origin are such that there is no significant likelihood of removal in the foreseeable future." *Galtogbah v. Sessions*, 2019 WL 3766280, at *2 (W.D. La. June 18, 2019). However, "an alien's claim must be supported by more than mere speculation and conjecture." *Id*. (internal quotations and citation omitted).

Once the alien has met his initial burden, the burden shifts to the Government to "respond with evidence sufficient to rebut the alien's showing." *Zadvydas*, 533 U.S. at 701. "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

Petitioner points out that he has been held in ICE custody awaiting removal since April 16, 2019. *See* [1-1]. Thus, the length of Petitioner's confinement is well in excess of the six-month presumptively reasonable period prescribed by the Supreme Court in *Zadvydas*. Petitioner asserts that he has cooperated fully with ICE and the removal efforts. *See* [1] at 6; [13] at 1. According to Petitioner, his removal is not likely in the foreseeable future because the governmental regime in Venezuela with "real actual power" has "broke[n] off all relations with the United States" and is not accepting detainees from the United States. *See* [13] at 2.

The record supports Petitioner's assertion as Respondent admits that there is "no direct flight to Venezuela." *See* [12] at 3. Petitioner has provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Thus, Petitioner has met his initial burden under *Zadvydas*. *See Hassoun v. Session*, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019) (finding that petitioner met his burden when he had shown that the countries with which he had an affiliation would not accept him).

The burden now shifts to the Government to rebut Petitioner's showing. Respondent counters that there is a significant likelihood of Petitioner's removal in the reasonably

3

foreseeable future. *See* Response [12]. Respondent's argument relies upon a Declaration [12-1] by Juan Barocio, an ICE Deportation Officer. In the declaration, Barocio states that ICE has Petitioner's passport (which expired on February 5, 2019), and ICE is "working on resuming removals to Venezuela." *See* [12-1] at 1. Barocio states that because there are no direct flights to Venezuela, ICE's planned procedure is to fly Venezuelans to Trinidad & Tobago and then arrange flights from there to Venezuela. *Id.* at 2. According to Barocio, ICE successfully removed a Venezuelan in November of 2019. *Id.* Barocio states that it is his "belief that Petitioner's removal to Venezuela is imminent." *Id.*

In his Reply [13], Petitioner argues that ICE's plan for removing Venezuelans is nothing more than "wishful thinking." Petitioner points out that his passport has expired and asserts that he cannot travel through Trinidad & Tobago without a valid passport. Additionally, Petitioner argues that the removal of a single Venezuelan in November of 2019 does not establish that his removal is imminent. Petitioner also filed a Motion to Enforce Removal or Release [15] on May 5, 2020, pointing out that he has been in ICE custody for more than a year.

On May 19, 2020, Respondent filed a Response [16] in opposition to the Petitioner's Motion [15]. Although Respondent still opposes the Petition [1], he discusses recent developments which make it less likely that Petitioner will be removed in the reasonably foreseeable future. According to Respondent, Venezuela has closed its airports and borders due to the COVID-19 pandemic. Respondent states that it is undetermined when Venezuela's borders will reopen, but ICE believes Petitioner's removal will be imminent once the borders are reopened. This assertion, however, is essentially conjecture.

Considering that Venezuela has refused to accept detainees from the United States for many months and that Venezuela has recently closed its airports and borders, it does not appear

4

likely that Petitioner will be removed in the reasonably foreseeable future.  That ICE was able to remove a single Venezuelan seven months ago—before Venezuela closed its airports and borders—does not demonstrate that Petitioner will be removed in the reasonably foreseeable future.

Five months have passed since Barocio stated that Petitioner's removal was *imminent*. Yet, Petitioner remains in ICE custody,[1] and it appear less likely today than it did in January of 2020 (when Barocio signed his declaration) that Petitioner will be removed anytime soon. Neither ICE's *belief* that Petitioner will be removed nor the information provided by Respondent satisfy the government's burden to rebut Petitioner's showing that he will not be removed in the foreseeable future.

"[A] theoretical possibility of eventually being removed does not satisfy the government's burden once the removal period has expired and the petitioner establishes good reason to believe his removal is not significantly likely in the reasonably foreseeable future." *Kane*, 2008 WL 11393137 at *5; *see also Andreasyan v. Gonzalez*, 446 F. Supp. 2d 1186, 1189-90 (W.D. Wash. 2006) (finding that respondent had not rebutted petitioner's showing that he would not be removed when respondent repeatedly asked for "a few more weeks" to obtain travel documents).  "[I]f [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur— or even that it *might* occur— in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

With no significant likelihood of removal in the foreseeable future, Petitioner's detention is now unreasonable.  *See Ali v. Dep't of Homeland Sec.*, 2020 WL 1666074 (S.D. Tex. Apr. 2,

---

[1] *See* https://locator.ice.gov/odls/#/index (lasted visited June 17, 2020).

2020) (granting writ when petitioner could not be removed due to travel restrictions to Pakistan). After more than a year of detention, "Petitioner's removal need not necessarily be imminent, but it cannot be speculative." *Hassoun*, 2019 WL 78984, at *6.

As Respondent has not met his burden to show that continued detention is authorized, Petitioner should be deported or released. "[T]he alien's release may and should be conditioned on any of the various forms of release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Zadvydas*, 533 U.S. at 700; *see Okwilagwe v. I.N.S.*, 2002 WL 356758 (N.D. Tex. Mar. 1, 2002) (granting writ of habeas corpus but setting conditions of alien's release).

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that:

1. the Petition [1] be GRANTED;

2. Petitioner's Motion to Enforce Removal or Release [15] be GRANTED; and

3. the Court order Immigration & Customs Enforcement to deport Petitioner or release him subject to appropriate conditions of supervision, to be determined by Immigration & Customs Enforcement, within thirty days of the Court's order granting the Petition [1].

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations of the magistrate judge or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation

within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 18th day of June, 2020.

                s/ Michael T. Parker
               United States Magistrate Judge